UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

GREGORY DALZELL, JR.,

    Plaintiff,

v.

ARLINGTON COUNTY SHERIFF'S
OFFICE and BETH ARTHUR,

    Defendants.

Case No.: 1:22-cv-407 (AJT/JFA)

## MEMORANDUM OPINION AND ORDER

Plaintiff claims that he was terminated from his employment with the Arlington County Sheriff's Department in violation of his due process rights under the Fourteenth Amendment and in the process was defamed. Defendants have filed a Motion for Summary Judgment [Doc. No. 30] and the Court held a hearing on the Motion on December 9, 2022, following which it took the Motion under advisement. Upon consideration of the Motion, the briefs in support thereof and in opposition thereto, and the argument of counsel at the hearing, and for the reasons set forth below, the Motion for Summary Judgment is GRANTED in favor the Defendants.

### I. Introduction

The Plaintiff was employed by the Arlington County Sheriff's Department beginning on June 3, 2019. [Doc. No. 1] at 3. As a condition of his employment, he was in a probationary status, pending the completion of his training. Defendant Sheriff Beth Arthur is the elected Sheriff of Arlington County, Virginia. *Id.* at 2.

Dalzell's employment with the Defendants required training in several aspects of law enforcement in which a Sheriff's Office employee is required to be proficient. [Doc. No. 31] at 2.

1

As part of his probationary employment, Dalzell was scheduled to train at the Arlington County Jail from February 16, 2020 through March 2020. *Id.* As part of training at the jail, Dalzell was expected to complete 'surveillance tours' or 'surveillance rounds.' *Id.* During these tours, Dalzell was expected to observe the jail cells that he was assigned to monitor during a shift. *See* [Doc. No. 1] at 5. For a completed surveillance tour, Dalzell was required to document that tour in an officer activity log. [Doc. No. 31] at 2.

On March 28, 2020, Dalzell failed to fully observe all the jail cells on his surveillance round. *Id.* at 3. Nevertheless, Dalzell marked in the officer activity log that he had conducted the surveillance tour despite failing to fully complete the surveillance tour as required. *Id.* In early April of 2020, Dalzell's supervising officers commenced an Internal Affairs investigation into Dalzell. *Id.* The Parties do not dispute that during the investigation interview, Dalzell admitted that he did not properly perform surveillance rounds due to "pure laziness" and that Dalzell admitted that he failed to fully complete several surveillance rounds. [Doc. No. 31] at 3; [Doc. No. 35] at 9. The report from the Internal Affairs investigation concluded that Dalzell demonstrated a pattern of failing to conduct surveillance tours and then falsifying records that related to the completion of those tours. [Doc. No. 35] at 9-10.

On April 22, 2020, Sheriff Arthur sent a letter to Dalzell terminating Dalzell's employment for falsifying office records. [Doc. No. 31] at 4.[1] The next day, Dalzell, through counsel, requested an administrative hearing with respect to his termination. *See* [Doc. No. 35-23]. Sheriff Arthur declined Dalzell's request for an administrative hearing. [Doc. No. 35-25].

---

[1] The letter states:
   Effective April 23, 2020, you are hereby dismissed from employment with Arlington County Sheriff's Office. While still in your 18-month probationary period, you failed to follow several policies and procedures that were taught to you during your field training. You failed to conduct surveillance rounds and falsified official Office records on numerous occasions. As such, you did not meet the standards required during probationary period. You will receive two weeks severance pay.
[Doc. No. 31-10]

2

Dalzell filed this action on April 11, 2022. [Doc. No. 1], alleging that both Defendants violated his right to due process under the Fourteenth Amendment of the United States Constitution, in violation of 42 USC §1983 (Count I) and that Sheriff Arthur's termination letter constituted defamation *per se* under Virginia law (Count II).

## II. LEGAL STANDARD

A party may move for summary judgment by identifying either a claim or defense, or a part of a claim or defense, on which summary judgment is sought. Federal Rule of Civil Procedure 56(a). Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact." *Id.* A party opposing a motion for summary judgment must point to specific factual evidence to show that a genuine dispute of material fact exists, and that summary judgment should not be granted in the movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 519 (4th Cir. 2003) (quoting *Anderson*, 477 U.S. at 247-248). At this stage, an issue of material fact is genuine if—based on the available evidence—no reasonable factfinder could find in favor of the non-movant. *Richardson v. Clarke*, 52 F.4th 614, 618 (4th Cir. 2022).

## III. DISCUSSION[2]

The Plaintiff has brought a claim pursuant to 42 USC §1983 for violations of Dalzell's due process rights under the Fourteenth Amendment of the United States Constitution, which includes the right for a person to be free from stigma to their "good name, reputation, honor, or

---

[2] Defendants have moved for summary judgment based on the merits of these claims as well as qualified immunity. For the reasons stated below, the Court grants summary judgment on the merits; and there is accordingly no need to address the qualified immunity defense.

3

integrity" without first having notice and opportunity to be heard. *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). To support a claim for a due process violation based on reputational injuries, a plaintiff must show that statements about him "(1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." *Sciolino v. City of Newport News*, 480 F.3d 642, 646 (4th Cir. 2007). Dalzell has also brought a defamation claim under Virginia law.[3] To state a claim for defamation under Virginia law a plaintiff must show that there was "(1) publication of (2) an actionable statement with (3) the requisite intent." *Lokhova v. Halper*, 995 F.3d 134, 145 (4th Cir. 2021) (quoting *Va. Citizens Def. League v. Couric*, 910 F.3d 780, 783 (4th Cir. 2018)). The core of both claims is his termination and its accompanying statement that "[w]hile still in your 18-month probationary period, you failed to follow several policies and procedures that were taught to you during your field training. You failed to conduct surveillance rounds and falsified official Office records on numerous occasions. As such, you did not meet the standards required during probationary period. You will receive two weeks severance pay." [Doc. No. 32-10].

1. Plaintiff's Due Process Claim

As an initial matter, it is undisputed that Dalzell requested a post-termination administrative hearing and was not given one.[4] It is also undisputed that Dalzell generally knew what was required to complete a surveillance round, that he knew that he needed to report accurately on those rounds, [Doc. No. 35] at 35 ¶ 9, and that he did not properly complete several of his assigned surveillance rounds. *Id.* at 35 ¶ 8. In that regard, Defendants have pointed to uncontradicted evidence that Dalzell's surveillance rounds were not complete and that the

---

[3] Written defamation in Virginia constitutes "libel," the elements of which are essentially the same as "defamation." *See Jordan v. Kollman*, 269 Va. 569 (Va. 2005).

[4] The Defendants do not deny that Plaintiff requested a hearing. Defendants contend, however, that the request did not sufficiently apprise the Defendants that the request was for the purpose of clearing his name. [Doc. No. 31] at 7. For the purposes of the Motion, this dispute does not involve a material factual dispute, and the Court assumes that Plaintiff made an adequate request for an administrative hearing.

records of those rounds were false. See [Doc. No. 32-7]; [Doc. No. 32-1]; [Doc. No. 32-8] (the internal affairs investigation report, Dalzell's own deposition, and the audio tape of the Internal Affairs interview with Dalzell.) And in his deposition, Dalzell conceded that several of his surveillance rounds were marked as completed in the officer activity log when they had not been completed. [Doc. No. 32-1] at 8. Dalzell further characterized his actions as "lying" when Dalzell was interviewed by Internal Affairs. [Doc. No. 35] at 13 ¶ 13.[5] Based on this record, there is no disputed material fact regarding whether Dalzell made false entries in office activity logs.

Based on these undisputed facts, an administrative hearing in connection with Dalzell's termination was not constitutionally required since there was no underlying factual dispute concerning the basis for his dismissal. *Codd v. Velger*, 429 U.S. 624, 627 (1977) ("When we consider the nature of the interest sought to be protected, we believe the absence of any such allegation or finding [that an allegation was substantially false] is fatal to respondent's claim under the Due Process Clause that he should have been given a hearing.") Here, given the absence of a factual dispute as to whether Plaintiff accurately completed certain entries in his surveillance logs, and the undisputed fact that he was terminated on that basis, there was no factual issue that needed to be resolved through a hearing. *See Id.* ("But if the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute between an employer and a discharged employee which has some significant bearing on the employee's reputation."); *see also Gilbert v. Homar*, 520 U.S. 924, 933 (1997) (finding no deprivation of liberty interest when there was no need to hold a pre-suspension hearing to

---

[5] Without disputing that he failed to complete certain of his surveillance logs accurately, Dalzell denies that some of the surveillance rounds were improper or uncompleted, although the only evidence to support this position is Dalzell's own assertion devoid of any further factual support. *See Tom v. Hospitality Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (a non-movant's conclusory assertions and denials are not sufficient to preclude granting summary judgment) (citations omitted).

5

determine if plaintiff had been formally charged with a felony); *Osborne v. King*, 2007 U.S. Dist. LEXIS 80798 at *23-24 (W.D. Va. October 31, 2007) (a plaintiff must show "that the allegations against him are capable of being proven false" to state a due process claim based on the denial of name-clearing hearing); *Clibrone v. Department of State Police*, 483 F. Supp. 207, 211 (E.D. Va. 1980) (a plaintiff's guilty plea indicated there was no need to hold a due process hearing on loss of a property interest in relation to drug possession); *see also McNeil v. Butz*, 480 F.2d 314, 326 (4th Cir. 1973) (affirming dismissal of a claim for an administrative hearing when a defendant had admitted to an allegation made by an employer).

Plaintiff claims that a hearing was required given the training he was not given and other issues that had arisen in his employment. But none of those issues were material to whether the Plaintiff failed to record accurately whether he had conducted his rounds as required. In short, none of the issues that Plaintiff hoped to raise at an administrative hearing were material to whether he had falsified the surveillance logs, the grounds for termination.[6] Likewise, for essentially the same reasons, and as discussed further below with respect to Plaintiff's defamation claim, a hearing was not required based on any reputational injury[7] Plaintiff may have suffered. Also for these reasons, the Plaintiff has not demonstrated that there is a cognizable due process claim based on the existence of the challenged statement. *See Ridpath v. Bd. of*

---

[6] As evidence of a contested fact related to the grounds for his termination, Plaintiff points to the statement in the termination letter that "you failed to follow several policies and procedures that were taught to you during your field training." But reasonably read, that statement refers to the failure to accurately record whether Plaintiff had completed his rounds, and there is no contention that Plaintiff somehow was not taught or needed additional training to know that he should not falsify his surveillance record, as demonstrated by Dalzell's own deposition testimony. [Doc. No. 32-1] at 13 ("Q. So at the—and by the end of March, last week of March of 2020, you knew what a proper surveillance round was, didn't you? A. Yes.")

[7] Citing to *Garraghty v. Virginia, Dep't of Corrections*, Plaintiff contends that a full administrative hearing must be held whenever a government employee is terminated. 52 F.3d 1274 (4th Cir. 1995). Relying on *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985), which recognized—for due process purposes—a permanent employee's property interest in continuing employment, the Fourth Circuit in *Garraghty* dealt with the due process rights of a permanent government employee, with substantive rights under state law, who denied the charges of sexual harassment against him. *Id.* at 1278. Here, Dalzell was a probationary employee who admitted a substantial amount of the factual allegations against him prior to his termination and did not have the property interests of a permanent employee distinct from his reputational interests.

*Governors Marshall Univ.*, 447 F.3d 292, 312 (4th Cir. 2006) ("There can be no deprivation of liberty unless the stigmatizing charges at issue are false."); *Walker v. Tyler,* 1996 U.S. Dist. LEXIS 8893 at *15-16 (E.D. Va. 1996) (failure to allege a supervisor's statements were false implies there is no cognizable claim for reputational injury); *Handberg v. Goldberg*, 297 Va. 660, 666 (Va. 2019) ("for a statement to be actionable as defamation, it must have a provable false factual connotation") (internal quotations omitted).

2. Plaintiff's Defamation Claim

With respect to his defamation claim, Plaintiff contends that he was defamed when his termination letter stated that he had falsified the surveillance logs. The core of that claim is the contention that the statement that he falsified records implies that he *intentionally* falsified records and that there is a genuine issue in that regard since he claims he did not intentionally fail to accurately complete the surveillance, but rather did so because of a lack of training and because he was lazy, not mendacious. [Doc. No. 35] at 13 ¶ 13. However, the termination letter that contains the challenged statement does not read that Dalzell 'intentionally falsified office records.' [Doc. No. 31-10].

Under Virginia defamation law, the Court must determine whether an allegedly defamatory statement is "susceptible to the defamatory meaning alleged." *Va. Citizens Def. League*, 910 F.3d at 786; *see also Wells v. Liddy*, 186 F.3d 505, 523 (4th Cir. 1999) ("Virginia law requires that the potential defamatory meaning of statements be considered in light of the plain and ordinary meaning of the words used in context as the community would naturally understand them.") (references omitted); *Schaecher v. Bouffault*, 290 Va. 83, 94 (Va. 2015) ("a court must decide as a threshold matter of law whether a statement is reasonably capable of defamatory meaning before allowing the matter to be presented to a finder of fact.")

7

The plain meaning of the word 'falsify' does not inherently imply the nefarious intent that Dalzell argues it does, but merely refers to the act of making or changing something to make it untrue, incorrect or inaccurate. Even the definition Plaintiff urges the Court to adopt is devoid of any mental state necessarily attached to its meaning. [Doc. No. 35]. at 18.[8] In sum, the word "falsify" in the context used in the termination letter simply implies that a person took some action, and that the action resulted in a false document. As discussed above, there is no genuine dispute that Dalzell filled out the officer activity log and that the officer activity log was false. Therefore, the statement that Dalzell "falsified Official records" is a true statement and cannot be the basis for defamation or due process claims.

It is also undisputed that Dalzell's employee record has not been disclosed to anyone outside the Defendants' office. *see* [Doc. No. 35] at 16 ("While Plaintiff has no evidence that the Sheriff's Office has released his personnel file to any prospective employer..."). Nevertheless, essentially relying on case law pertaining to a due process claim, Plaintiff points to the statement in the Sheriff's office policy [Doc. No. 35-28] that his personnel file may be shown to future employers as an adequate basis upon which to establish the publication element and on that basis contends that there is likely a genuine factual dispute as to whether the employee record would be made public. *See Sciolino,* 480 F.3d at 649 ("When a plaintiff alleges that his termination is based on false, stigmatizing charges that are likely to be inspected by prospective employers, he states a claim that the government has deprived him of these liberty interests.") The Court has found no support under Virginia law for this contention and concludes that the mere prospect of a publication does not establish the publication element of a Virginia common law defamation claim. *See e.g. Wynn v. Wachovia Bank, N.A.,* 2009 U.S. Dist. LEXIS 38250 at *11 (E.D. Va.

---

[8] See [Doc. No. 35] at 18, citing FALSIFY, Black's Law Dictionary (11th ed. 2019) ("Black's Law Dictionary defines 'falsify' as '[t]o make deceptive; to counterfeit, forge, or misrepresent; esp., to tamper with (a document, record, etc.) by interlineation, obliteration, or some other means.'"

2009) (a claim that it was "likely" a former employer would communicate with future employers is not sufficient to satisfy the publication element of a defamation claim).

For the above reasons, there are no genuine issues of material fact and Defendants are entitled to judgment in their favor as to both Counts.

## IV. CONCLUSION

For the above reasons, it is hereby

ORDERED that the Defendants' Motion for Summary Judgment [Doc. No. 30] be, and the same hereby is, GRANTED and that this action is hereby DISMISSED.

The Clerk is directed to forward a copy of this Memorandum Opinion and Order to all counsel of record and enter judgment in favor of defendant pursuant to Fed. R. Civ. P. 58.

/s/
Anthony J. Trenga
Senior United States District Judge

December 19, 2022
Alexandria, Va.